UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE BELL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 14-5131 (JLL)<br><br>OPINION |

LINARES, District Judge.

This matter comes before the Court upon the appeal of Christine Bell ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Richard De Steno upholding the final decision of the Commissioner denying in part Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decisions of the Commissioner are **affirmed**.

I. BACKGROUND

   A. Procedural History

On April 8, 2010, Plaintiff filed an application for SSI, alleging disability beginning February 20, 2010. (R. at 133). The application was denied by the Commissioner on August 21, 2010, and upon reconsideration on August 18, 2011. (R. at 86, 94). A request for a hearing was filed and subsequently held on July 17, 2012. (R. at 97, 107). On August 10, 2012, Administrative Law Judge Richard De Steno issued an opinion finding Plaintiff disabled as of

February 24, 2012, but not earlier as claimed in Plaintiff's initial application. (R. at 21). Plaintiff filed a request to the Appeals Council for review which was denied on June 17, 2014. (R. at 1). Plaintiff then commenced the instant action.

Factual History

1. Plaintiff's Testimony

At the time of her initial application, Plaintiff was fifty-three years old. She last worked as a bus attendant on school buses until she was laid off in 2002. (R. at 22, 42). Plaintiff claims that she can no longer work because she has disabilities involving her right knee as well as her back. (R. at 43). She cannot bend her leg at night, and at times her back hurts such that she cannot walk at all. (R. at 43). She can sit for a half-hour before her legs cramp, as well as stand for a half-hour to forty-five minutes. (R. at 44). She does not know how much weight she can carry. (R. at 44). Her job as a bus attendant was full time, and required that she help a small child in a wheelchair. (R. at 41, 46). Other than that she did not do any lifting or carrying, and occasionally had to stand to keep the children in line. (R. at 42).

During the day, Plaintiff spends most of her time sitting in the house or back yard. (R. at 45). She has some difficulty getting dressed, and she cooks and cleans on occasion. (R. at 44-45). She can lift a gallon of milk with two hands. (R. at 47). She feels depressed, and has difficulty sleeping due to nightmares. (R. at 43-44). She has a driver's license but does not go anywhere by herself. (R. at 45).

2. Medical Evidence

On June 16, 2010, Dr. Justin Fernando examined Plaintiff at the request of the Administration. (R. at 196). Plaintiff complained of arthritis, swelling, high blood pressure, depression, sleep disorder, poor eating habits and high cholesterol levels. (R. at 196). She

complained of pain in her joints, and claimed her greatest pain was in the weight bearing areas of the lower back, knees and ankles. (R. at 196). This pain gives her difficulty with weight bearing, walking, or standing for any length of time. (R. at 196). She claimed she could not stand continuously for more than a few minutes. (R. at 196). Dr. Fernando observed that her gait was normal, and she did not need help changing for the exam. (R. at 197). He found that she had a slightly limited range of motion in her knees, but had normal range of motion in all other joints. (R. at 197-198). Her X-rays also appeared normal. (R. at 198).

On June 20, 2010, Dr. Paul Fulford examined Plaintiff, whose chief complaints at the time were loss of balance, dizziness and high blood pressure. (R. at 203-204). She complained of auditory hallucinations for three months prior to the examination. (R. at 205). She also complained of visual hallucinations that she likened to shadows, and tactile hallucinations that awaken her from sleep. (R. at 205). Dr. Fulford stated that Plaintiff's short term auditory recall memory was mildly impaired, her concentration appeared good, and calculation ability as well as her judgment appeared fair. (R. at 205). He also noted that "no bizarre or inappropriate qualities were noted," her speech was clear and goal oriented, and that her mental control was good. (R. at 204). Dr. Fulford diagnosed Plaintiff with Dysthymic disorder, and assigned her a Global Assessment of Functioning ("GAF") score of 65. (R. at 205).

On September 14, 2010, Plaintiff admitted herself to the emergency department at University Hospital with complaints of a backache. (R. at 213). She was given a prescription for Naproxen and an injection of Toradol. (R. at 214). The only diagnosis recorded was backache. (R. at 215).

Dr. Thomas Francis of Rhomur Medical Services' records dated between October and December of 2010 reflect uncontrolled hypertension as well as marijuana abuse attributed to her

depression. (R. at 217-226). Dr. Francis also had Plaintiff undergo an EKG on October 1, 2010. R. at 239. The findings of the EKG were termed "abnormal" as Plaintiff had left ventricular hypertrophy as well as sinus bradyardia. (R. at 240). Dr. Francis ordered an X-ray of Plaintiff's lumbar spine on October 28, 2010, which was "unremarkable", with no abnormalities. (R. at 219).

Later, Dr. Stacy Mevs ordered an X-ray dated February 14, 2011 which showed mild degenerative change in the right knee. (R. at 243). Of note however is that according to the report these X-rays were not compared to the previous images ordered by Dr. Fernando or any other images. (R. at 243).

On July 13, 2011, Dr. Rahel Eyassu examined Plaintiff at the request of the administration. (R. at 227). Plaintiff complained of arthritis in her ankle and both knees, and stated that she had difficulty walking. (R. at 227). Dr. Eyassu found that the plaintiff had a limping gait, favoring her right knee. (R. at 227). Plaintiff was diagnosed with arthritis, worse in the right knee, and poorly controlled hypertension. (R. at 228).

On July 28, 2011, Dr. Kim Arrington examined the Plaintiff. (R. at 236). Plaintiff reported dysphoric moods, crying spells, fatigue, self isolation, difficulty concentrating, weight loss, as well as other anxiety-related symptoms such as panic attacks and excessive worry. (R. at 236). Plaintiff reported auditory hallucinations of her mother calling her name. (R. at 236). Other cognitive problems that appeared after her mother's death were reported by Plaintiff as well, such as becoming lost, confused and deficits in memory, which she put forth as reasons why she avoids travel. (R. at 236-237). Plaintiff claims that she needs help dressing, bathing, cooking and cleaning because of her knee problems. (R. at 238). It was Dr. Arrington's estimation that Plaintiff's intellectual functioning was low average. (R. at 237). Through

various tests Dr. Arrington concluded that Plaintiff's insight and judgment were fair, and her recent/remote memory was mildly impaired. (R. at 237). It was in Dr. Arrington's opinion that Plaintiff would have difficulty learning new tasks and performing complex tasks without support. (R. at 238). Dr. Arrington diagnosed Plaintiff with Adjustment disorder and with anxiety/depressed mood and assigned a Global Assessment of Functioning ("GAF") score of 52. (R. at 238).

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence

was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III. APPLICABLE LAW

#### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. §1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. §1382c(a)(3)(B).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. §416.920. The claimant bears the burden of establishing the first two requirements, namely that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with a "severe impairment" or "combination of impairments." 20 C.F.R. §404.1520(a)-(c). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1 (the "Listings"). If the claimant

demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. Id. If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. Id. If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. Yuckert, 482 U.S. at 146 n.5.

B.  The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## IV. DISCUSSION

Plaintiff argues that there is not substantial evidence supporting the ALJ's finding that Plaintiff's mental impairment was not severe. (Pl. Br. at 10-11). Plaintiff claims that the ALJ, in making this finding of non-severity, relied on isolated statements from Dr. Fulford and also ignored the medical evidence from the other administration appointed medical professionals. (Pl. Br. at 11). Further, Plaintiff argues that there is not substantial evidence supporting the ALJ's finding that Plaintiff was not disabled prior to February 24, 2012. (Pl. Br. at 19). Plaintiff stresses that the ALJ's RFC assessment is merely conclusory and is against the medical evidence on record. (Pl. Br. at 19-20). For the reasons that follow, this Court does not agree.

### A. Whether Substantial Evidence Supports the ALJ's Findings Regarding the Severity of Plaintiff's Mental Impairment

Plaintiff contends that the Commissioner and subsequently the ALJ improperly evaluated the medical evidence with respect to the severity of any mental impairments or combination thereof. (Pl. Br. at 11). Plaintiff also argues that the ALJ's credibility decisions were improper

and thus should be overturned. (Pl. Br. at 19). The determination of whether a medically determinable impairment is severe or a combination of impairments is severe occurs at step two of the five-step sequential evaluation process for determining disability. See 20 C.F.R. § 416.920. The severity of an impairment must be such that it "significantly limits" the ability to perform work activities. 20 C.F.R. § 416.920(c). This is first accomplished by rating the degree of functional limitation imposed by the mental impairment. 20 C.F.R. § 416.920a(c). There are four categories under which the degree of limitations are assessed; activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). A rating of "none, mild, moderate, marked and extreme" are accorded to each of the first three categories based on all of the relevant evidence. 20 C.F.R. § 416.920a(c)(4). Then, a count is taken on the number of episodes of decompensation and given an appropriate score. Id. Here, the ALJ found that Plaintiff had no more than mild limitations in the first three categories, and no episodes of decompensation. (R. at 20-21). The Court finds that the following substantial evidence supports the ALJ's assessment.

### 1. Substantial Evidence from Dr. Fulford's report supports the ALJ's decision

Plaintiff contends that the ALJ relied on isolated statements from Dr. Fulford in finding Plaintiff's mental impairments not severe, and ignored Dr. Fulford's findings in favor of Plaintiff. (Pl. Br. at 11). Plaintiff points to Dr. Fulford's findings that Plaintiff's short term auditory recall memory was mildly impaired, Plaintiff's complaints to Dr. Fulford regarding hallucinations as well as Plaintiff's report to Dr. Fulford that her daily activities were limited to getting her son ready for school. (Pl. Br. at 11-12). However, the Court finds that the ALJ adequately assessed Dr. Fulford's report, in its entirety.

The ALJ in particular addressed Dr. Fulford's finding that Plaintiff did not have any cognitive limitations except for the aforementioned mild limitation on short term auditory recall memory. (R. at 20). Dr. Fulford found, and the ALJ addressed, that Plaintiff's mental control was good, speech was clear and goal directed, there were no signs of psychomotor agitation or retardation, and no bizarre or inappropriate qualities noted. (R. at 20, 204-205). Dr. Fulford also found that Plaintiff's concentration and abstract thinking appeared "good" and Plaintiff's calculation and judgment appeared "fair." (R. at 20, 205). He also estimated that her intelligence was "within normal limits." (R. at 205). None of Dr. Fulford's evaluations contend that Plaintiff's impairments were anything other than mild. (R. at 204-205).

Plaintiff claims the ALJ ignored evidence from Dr. Fulford's report, and points to the subjective complaints of hallucinations mentioned therein. (Pl. Br. at 11-12). However, "an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). While subjective testimony can be used to establish disability, there are not any objective medical facts or observations by Dr. Fulford to support the existence of hallucinations other than Plaintiff's reports. 20 C.F.R. § 416.929(b). With the complaints of hallucinations in mind, Dr. Fulford nonetheless assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 65. (R. at 205). A GAF score is not conclusive, however a GAF score can reflect the medical professional's notes regarding the patient's symptoms and also quantifies their overall judgment regarding the extent of impairment. Rios v. Comm'r of Soc. Sec., 444 F. App'x 532, 535 (3d Cir. 2011). Accordingly, this Court finds that substantial evidence supports the ALJ's decision in weighing the subjective complaints of the Plaintiff with the other evidence and observations from Dr. Fulford's report.

## 2. Substantial Evidence from Dr. Arrington's Report Supports the ALJ's Decision

Plaintiff argues that the ALJ ignored evidence from Dr. Arrington's report. (Pl. Br. at 12). In support of that contention, Plaintiff points to Dr. Arrington's opinion that Plaintiff would have difficulty learning new tasks as well as Dr. Arrington's opinion that the results of her evaluation appear consistent with psychiatric problems. (Pl. Br. at 12-13). The Court finds that the ALJ, in weighing conflicting medical reports, made a decision that is supported by substantial evidence.

The ALJ found that Dr. Arrington's opinion was not corroborated in the medical record and was based entirely on the subjective complaints of the Plaintiff. (R. at 20). Dr. Arrington opined in her report that Plaintiff "will have difficulty learning new tasks and performing complex tasks independently," "she would need support to maintain a regular schedule," and that "the results of the present evaluation appear to be consistent with psychiatric problems." (R. at 238). However, the evidence from the reports of Dr. Fulford as well as Dr. Arrington herself contradict these conclusions. Indeed, Dr. Arrington's report had very similar findings to that of Dr. Fulford's. Dr. Arrington found that Plaintiff's speech was fluent, thought process was goal oriented, cognitive functioning was fair, and also noted a mild impairment to Plaintiff's recent and remote memory. (R. at 204-205, 237). The bulk of the medical issues mentioned in Dr. Arrington's report were in fact, complaints of the Plaintiff, and not objective medical evidence. (R. at 236-238). For example, the Plaintiff reported depression symptoms after her mother's death, anxiety-related symptoms, getting lost or confused easily, as well as panic attacks. (R. at 236-237). None of these claims are corroborated by any medical evidence, as the ALJ states. (R. at 20).

Further, Dr. Arrington assigned Plaintiff a GAF score of 52. (R. at 238). A GAF score between 51 and 60 is representative of "Moderate Symptoms" while a score between 61 and 70, like the score Plaintiff received from Dr. Fulford, is representative of "Some Mild Symptoms". Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") 34 (American Psychiatric Assoc. 2000). A review of Dr. Arrington's, as well as all of the evidence regarding mental impairments as a whole, reveals some evidence of mild mental impairments and no evidence of moderate mental impairments. (R. at 20). In fact neither Dr. Fulford nor Dr. Arrington mention any measure of cognitive functioning as being "moderately" impaired, and for most measures of functioning utilize descriptors such as "fair", "good" and "mild." (R. 204-205, 236-237). Accordingly, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe. (R. at 21).

3. <u>The ALJ appropriately weighed evidence accordingly by assessing credibility</u>

Plaintiff points to the reported hallucinations and contends that the ALJ ignored these symptoms. (Pl. Br. at 12). The complaints of hallucinations are reported by both Dr. Fulford and Dr. Arrington, however it was Dr. Arrington who noted that throughout the examination there were no manifested signs of hallucinations. (R. at 237). Accordingly, the ALJ specifically determined that Dr. Arrington's report was influenced by subjective complaints which were not corroborated in the record and chose to accord it less weight. (R. at 20). The Court finds that this determination is supported by substantial evidence.

The Plaintiff also brings to the Court's attention the observations of the social security claims representative. (Pl. Br. at 16-17). The claims representative conducted an interview and stated that "at first I thought [Plaintiff] may have been suffering from a mental condition," and noted that she had difficulty with hearing, reading, breathing, understanding, concentrating and

coherency. (R. at 152). Although the ALJ did not address the claims representative's statement, it would not be error to accord it no credibility. (Pl. Br. at 17). The medical reports of both Dr. Fulford and Dr. Arrington directly contradict the statement of the claims representative. Both doctors noted that Plaintiff's speech was clear and coherent, that she was able to maintain concentration, that she understood the purpose of their examinations. (R. at 204-205, 237-238). Given that both doctors' reports are part of the medical evidence record they are properly accorded more weight than a statement from a representative at a field office. See 20 C.F.R. § 416.929(a). Therefore the ALJ did not err in omitting his consideration of this evidence..

B. Whether Substantial Evidence Supports the ALJ's Decision that Plaintiff Retained an RFC Capable of Performing a Full Range of Light Work Prior to February 24, 2012

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination was conclusory and is not supported by the medical evidence in the record. (Pl. Br. at 19). Plaintiff specifically contends that the ALJ failed to consider the Plaintiff's physical limitations such as difficulty with weight bearing, and standing or walking for any length of time. (Pl. Br. at 20). Plaintiff further argues that the ALJ failed to consider non-physical impairments which would hamper her ability to perform light work further. (Pl. Br. at 20). A claimant's RFC is considered before moving on to step four of the five step sequential evaluation. 20 C.F.R. § 416.920(a)(4). The RFC is used to determine if a claimant can do their past relevant work; if they cannot the fifth step determines whether they can adjust to other work. 20 C.F.R. § 416.920(c). In analyzing whether a claimant can adjust to other work, the previously determined RFC is considered together with the claimant's vocational factors (age, education, and work experience). 20 C.F.R. § 416.920(g)(1). Here, the ALJ determined that Plaintiff, prior to February 24, 2012,

was capable of a full range of light work, as defined in 20 C.F.R. § 416.967(b). The Court finds that there is substantial evidence in support of the ALJ's determination.

The ALJ did in fact address the medical evidence concerning the Plaintiff's physical limitations. (R. at 21-22). He noted that Dr. Fernando found nothing in the X-rays of Plaintiff's knees and only reported a slightly decreased range of motion in the right knee and also that Dr. Fernando indicated that Plaintiff walked with a normal gait. (R. at 22). The ALJ notes that the X-ray of the lumbar spine ordered by Dr. Francis was unremarkable, he also notes the X-rays ordered by Dr. Mevs, which reveal a mild degenerative change in the right knee. (R. at 22). He details Dr. Eyassu's report which states that Plaintiff had a full range of motion in her knees, but had a limping gait. (R. at 22). After detailing the evidence the ALJ found that the subjective complaints of pain were far in excess of what could be reasonably expected, given Plaintiff's medical records. (R. at 24).

The ALJ had also considered the mental impairments of the Plaintiff and found them to be non-severe as they were nothing more than mild. (R. at 21). Indeed, the medical evidence in the record as well as that which is cited by the ALJ in his decision attests to the fact that there is a negligible showing of a mental impairment. (R. at 204-205, 236-238). Therefore, the Court finds that there is substantial evidence to support the decision of the ALJ in finding that Plaintiff had an RFC capable of light work prior to February 24, 2012.

Accordingly, this Court finds that the ALJ's determination that Plaintiff was not disabled prior to February 24, 2012 is supported by substantial evidence. As such, the final decision of the Commissioner is affirmed.

## V.   CONCLUSION

For the foregoing reasons, the decisions of the Administrative Law Judge are **affirmed**. An appropriate order follows this Opinion.

DATED: 22 of June, 2015.

JOSE L. LINARES
U.S. DISTRICT JUDGE